## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## EASTERN DIVISION
## FILE NO.: 4:21-cv-00008

| | |
|---|---|
| DONNA BOYKIN, | |
| Plaintiff, | |
| | COMPLAINT |
| vs. | |
| | **(DEMAND FOR A JURY TRIAL)** |
| EAST CAROLINA UNIVERSITY, | |
| Defendant. | |

This action is brought on behalf of Donna Boykin, (hereinafter "Ms. Boykin" or "Plaintiff") against her former employer, East Carolina University (hereinafter "ECU" or "Defendant"). In support of her Complaint, the Plaintiff states and alleges as follows:

### NATURE OF THE CASE

1.      The Plaintiff, Ms. Boykin, is a Registered Nurse licensed to practice by the North Carolina Board of Nursing, and she was employed with Defendant ECU for over twenty-one (21) years, serving most recently for twelve (12) years as a Nurse Administrator of Clinical Operations for the Obstetrics and Gynecology department ("OBGYN").

2.      During her employment, ECU never disciplined Ms. Boykin and evaluated her performance indicating she was meeting or exceeding expectations until she developed a disability.

3.      Upon information and belief, on or about Spring 2018, OBGYN Medical Director, Dr. Sarah Elizabeth Smith, and Clinical Academic Department Administrator, Kristie Anderson, both noticed Ms. Boykin's hands trembling, and they began a campaign to remove Ms. Boykin from her position based upon mistaken and discriminatory beliefs about Ms. Boykin's disability.

## THE PARTIES

4.     Plaintiff Donna Boykin is a citizen of North Carolina who maintains her residence or domicile in Lucama, North Carolina.

5.     Plaintiff was employed by Defendants from 1997 to 2019.

6.     Defendant East Carolina University ("ECU") is a constituent member of the University of North Carolina organized pursuant to N.C. Gen. Stat. § 116 et. seq. and an employer within the meaning of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. The Brody School of Medicine at East Carolina University is part of ECU and exists pursuant to N.C. Gen. Stat. §116-40.4.

## JURISDICTION AND VENUE

7.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343, because they arise under the laws of the United States.

8.     This Court has supplemental jurisdiction over Plaintiff's claims arising under Plaintiff's claim for Wrongful Discharge in Violation of North Carolina Public Policy under 28 U.S.C. § 1367 because the state law claims arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is proper in this Judicial District under 28 U.S.C. § 1391(b)-(c), because Defendant ECU maintains offices in this District, and conducts business in this District. A substantial part of the events and omissions giving rise to the claims alleged herein occurred in this District, the alleged unlawful employment practices were committed in this District, and employment records relevant to those practices are maintained and administered in this District.

10.     The Eastern District of North Carolina has personal jurisdiction over Defendant ECU because it maintains offices in this District, conducts business in this District, and because the acts complained of and giving rise to the claims alleged herein occurred in this District.

11.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission. On August 14, 2020, the EEOC issued a Notice of Right to Sue to the Plaintiff, which is attached hereto as Exhibit A.

12.     In an effort to resolve these matters without the need for litigation, Plaintiff and Defendant, through their respective counsel, engaged in informal settlement discussions and entered into three tolling agreements (dated November 9, 2020, December 9, 2020, and January 7, 2021) extending the statute of limitations for filing suit to January 15, 2021.  These agreements are attached hereto as Exhibit B.

13.     Plaintiff has complied with all administrative prerequisites necessary to bring this action, and Defendant has waived any and all defenses as to the timeliness of this filing.

## FACTS

**A.     Plaintiff's Employment History with Defendant ECU.**

14.     Ms. Boykin has been a registered nurse since August 1996.

15.     Ms. Boykin joined ECU as a temporary Staff Nurse on or about November 1997.

16.     In February 1998, ECU made Ms. Boykin a permanent Staff Nurse and eventually promoted her to a Lead Nurse that same year.

17.     On or about 2000, Ms. Boykin transferred over to the Medical Records Department in the Medical School to help ECU implement a new electronic medical records system.

3

18.     In 2001 or 2002, ECU Nurse Administrator Norma Williams invited and recruited Ms. Boykin to return to the OBGYN Department, so she applied, and ECU rehired her and promoted her to a Nurse Manager.

19.     In 2008, ECU promoted Ms. Boykin to Nurse Administrator of Clinical Operations, over both the Brody Outpatient Center ("Brody") and the ECU Women's Physicians, both in the OBGYN department.

20.     In 2015, when the Nurse Manager over Brody left, while ECU conducted a search for a full-time replacement, ECU moved Ms. Boykin's office to Brody and tasked Ms. Boykin with also serving as the Nurse Manager over the Brody Outpatient Center as well as the ECU Women's Physicians between approximately May and September 2015, and she continued with these additional responsibilities, including training new staff members for both locations.

21.     For the next two years Ms. Boykin continued supporting these two locations, and Ms. Anderson praised Ms. Boykin in her 2017 annual evaluation, "Donna [Boykin] works hard and is focused on patient care…I think staff has been better utilized over the past year and that the Brody clinic has also seen improvements in processes and flow. I appreciate all of Donna's hard work and contributions to this Department."

**B.     ECU Managers' Discriminatory Attitudes Towards Disability**

22.     On or about early 2016, Dr. Smith apparently noticed that another employee, Edna Merritt, a Nurse Practitioner, had developed visible trembles, and she asked Ms. Boykin what was wrong with Ms. Merritt.

23.     Although Ms. Merritt had disclosed to Ms. Boykin that she had been diagnosed with Parkinson's disease, Ms. Boykin adhered to ECU policy and privacy laws in declining to share Ms. Merritt's protected health information with Dr. Smith.

4

24.    Dr. Smith made derogatory comments about Ms. Merritt's condition, such as instructing Ms. Boykin to see if she could catch her not performing any job duties, asking whether patients had commented on her shaking, and continually asking the staff if they knew what was "wrong" with Ms. Merritt, and Dr. Smith continued to ask Ms. Boykin about Ms. Merritt's protected health information.

25.    Ms. Boykin also noticed that Dr. Smith and Ms. Anderson engaged in differential treatment of Ms. Merritt, such as making disparaging comments about her being out on Family and Medical ("FMLA") leave and attempting to disrupt her routine and change her assignments in an attempt to prompt her to quit.

26.    On information and belief, Ms. Merritt eventually left ECU due to discriminatory treatment based on her disability.

**C.    Discriminatory Treatment of Ms. Boykin**

27.    On or about early 2018, Ms. Boykin's hands began to noticeably tremble, and her head began to tik. These physical symptoms were clearly visible to any individual who interacted with her.

28.    Various ECU employees approached Ms. Boykin as they noticed a change in her physical condition to inquire about her health, express their concern, and encourage Ms. Boykin to see her doctor. (See Affidavits of Leslie Johnson and Samantha Harrell, Attached hereto as Exhibits C & D).

29.    Around the same time, ECU's OBGYN department was understaffed due to one nurse moving out of state, another nurse being out on FMLA, and following the termination of a medical assistant.

5

30.     Ms. Boykin expressed her worry that the lack of adequate staff created safety concerns to Dr. Smith and Ms. Anderson and during staff meetings in the presence of other nurses.

31.     Ms. Boykin also requested reasonable accommodations, both verbally and in writing, in the form of additional staffing given her failing health and other support.

32.     Instead of responding to Ms. Boykin's concerns in meetings, Dr. Smith and Ms. Anderson berated Ms. Boykin and cut her off mid-sentence only to ask another question or make disparaging comments.

33.     From the perspective of other employees in these meetings, including for example Samantha Harrell, Dr. Smith's and Ms. Anderson's intentional actions caused Ms. Boykin significant distress, which became visible as Plaintiff's hands tremored more violently and her head tic occurred with greater frequency. See Exhibit D.

34.     Rather than responding to her requests for accommodations, Dr. Smith and Ms. Anderson repeatedly told Ms. Boykin that there was no money in the budget to support her and refused to engage in interactive dialogue to explore possible ways to support her in performing the essential functions of her position.

35.     Because Dr. Smith and Ms. Anderson denied Ms. Boykin's requests for assistance to help her manage an understaffed department, Ms. Boykin attempted to continue managing both practices without proper staffing, but she did so by neglecting her own health needs.

36.     By June 2018, Ms. Boykin's condition worsened, and she developed high blood pressure and essential tremors, a neurological disorder significantly impacting the nervous system.

37.     Multiple ECU staff members continued to comment on Ms. Boykin's physical symptoms.

6

38.     By September 2018, Ms. Boykin's health had deteriorated to the point that she experienced severe visible shaking throughout her body, so she made an appointment to see her medical provider about her symptoms.

39.     Ms. Boykin requested, and Ms. Anderson approved her use of paid leave for this medical appointment.

40.     Immediately thereafter, on or about September 4, 2018, Dr. Smith and Ms. Anderson met with Ms. Boykin and again denied her requests for support, instead raising vague and unsubstantiated concerns about clinical issues, such as a lack of proper staff training, alleged conflicts among nurses, and alleged communication issues with staff and faculty.

41.     When Ms. Boykin asked for more information and what she could do to improve, neither Dr. Smith nor Ms. Anderson were able to provide a single example.

42.     Furthermore, Dr. Smith and Ms. Anderson explicitly directed Ms. Boykin not to discuss any of the alleged issues with staff members.

43.     On or about September 7, 2018, Ms. Boykin visited her medical provider, Mary Catherine Brake Turner, MD, who diagnosed her with anxiety and depression, and soon thereafter with essential tremors.

44.     Dr. Brake Turner recommended Ms. Boykin take several weeks of leave from work.

45.     On September 10, 2018, Ms. Boykin began a nine-week FMLA leave.

46.     On Friday, November 9, 2018, when her tremors were still obvious, Ms. Boykin met with Dr. Clifford Hayslip, OBGYN Chairman, and disclosed that she had anxiety, depression, and hypertension, and then, on Monday, November 12, 2018, she returned to work.

47. On November 15, 2018, only four (4) days after Ms. Boykin returned from medical leave, Dr. Smith and Ms. Anderson continued their discriminatory treatment and reiterated unsubstantiated and vague issues in the clinical department.

48. Ms. Boykin reiterated her request for more specific information, so that she could address any concerns, but once again, Dr. Smith and Ms. Anderson had no concrete complaints.

**D. Ms. Boykin's Protected Activity**

49. At this point Ms. Boykin reached out to Jeff Dozier in Human Resources ("HR") to complain about her treatment and request that they administer a climate survey of the department to obtain more information about any clinical issues needing to be addressed.

50. Mr. Dozier told Ms. Boykin it appeared to her she was being treated differently, and he advised her to reach out to ECU's Dean regarding her request for a departmental survey.

51. Following Mr. Dozier's direction, on November 19, 2018, Ms. Boykin reached out to Dr. Mark Stacy, Dean of ECU's Brody School of Medicine. As a courtesy, Ms. Boykin informed Chairman Hayslip that she had communicated with HR about the alleged clinical issues.

52. Immediately following this protected activity, on November 26, 2018, Ms. Boykin received her first written reprimand in her 20-year career, a "coaching letter" from Ms. Anderson.

53. Dean Stacy told Ms. Boykin that he forwarded Ms. Boykin's request back to Mr. Dozier in HR. However, this was the last communication Dean Stacy or HR staff members ever had with Ms. Boykin about these issues.

54. Finally, on or about January 10, 2019, Mr. Dozier and Ms. Martha Dartt, Director of Nursing, met with Ms. Boykin to follow-up on her original complaint.

55. During this meeting, Ms. Boykin mentioned to Ms. Dartt that, according to the North Carolina Board of Nursing, Nursing Practice Act, and N.C. Gen. Stat. § 90-171.20(7)(d) and

N.C. Gen. Stat. § 90-171.44(3), "The practice of nursing by a registered nurse consists of supervising other personnel in implementing the treatment regimen." Ms. Boykin complained to Mrs. Dartt that Ms. Anderson is not licensed and has no formal nursing education.

56. Furthermore, Ms. Boykin contacted the North Carolina Board of Nursing ("BON") to inquire whether Ms. Anderson, who is unlicensed, should have authority to assign, delegate, or supervise other licensed nurses.

57. The BON agreed that nurses must be supervised by someone with a nursing license, and, on information and belief, ECU failed to comply with this admonition by improperly allowing Ms. Anderson to continue supervising licensed nurses.

58. On information and belief, Ms. Anderson still unlawfully supervises the nurse supervisor position.

59. While managing her own health conditions and both the OBGYN and Brody Outpatient Center, Ms. Boykin maintained open communication with Ms. Anderson and Dr. Smith about her disabilities, as well as her progress to meet their expectations. She requested additional time and assistance to perform her essential job responsibilities, and ECU managers flatly denied her requests and refused to engage with her or propose any accommodations.

60. On March 25, 2019, rather than address her reasonable accommodation requests, Ms. Anderson gave Ms. Boykin a written warning for unsatisfactory job performance and unacceptable personal conduct.

61. Ms. Boykin sent a rebuttal to HR on April 22, 2019.

62. Two weeks later, Ms. Anderson sent Ms. Boykin her annual review stating she had not met expectations. This was the first and only unsatisfactory performance evaluation Ms. Boykin ever received in her 21-year tenure at ECU.

9

63. During the next two months, Ms. Boykin continued to ask for support while working full-time and attending doctor's appointments to manage her conditions.

64. On June 28, 2019, having never formally responded to her reasonable accommodation requests, Ms. Anderson gave Ms. Boykin a final warning and ECU summarily terminated her employment.

## COUNT I: ADA – DISPARATE TREATMENT

65. Paragraphs 1 through 64 are incorporated herein by reference as though set forth in full.

66. At all times relevant herein, Ms. Boykin has been a person with a disability under 42 U.S.C. § 12101(2) in that he has had a physical or mental impairment that substantially limited one or more of her major life activities. Namely, Ms. Boykin has experienced limitations caused by the chronic medical condition of essential tremors, a neurological disorder. Plaintiff is a person with a disability, as defined under the Americans with Disabilities Act ("ADA"), because she suffers from essential tremors, as well as high blood pressure, anxiety and depression which significantly impact her ability to perform manual tasks and use fine motor skills, as well as her concentration and thinking.

67. At all times relevant herein, Ms. Boykin was a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12111(8), in that with or without reasonable accommodation, as defined in 42 U.S.C. § 12111(9), Ms. Boykin could perform the essential functions of her employment position, but for Defendant's acts of illegal disability discrimination, as alleged herein.

68. On information and belief, Defendant wrongfully and intentionally discriminated against Ms. Boykin because of her disability in violation of the Americans with Disabilities Act

of 1990, as amended and codified in 42 U.S.C. § 12111, et seq. ("ADA") in at least the following independent, collective, or alternative ways:

a.      On or about beginning in October 2018 and continuing throughout her employment, because of her disability, or because Defendant regarded her as disabled, or because she had a record of having a disability, ECU managers failed effectively and clearly to communicate expectations to Ms. Boykin.

b.      When on multiple occasions Ms. Boykin's supervisor, Kristie Anderson and OBGYN Medical Director Dr. Smith spoke to her in a demeaning manner, expressed frustration when Ms. Boykin requested additional guidance or time off for medical appointments, and ignored her safety concerns and requests for assistance, ECU's treatment was disparate from its treatment of employees without disabilities.

c.      ECU's adverse employment action through unfair punitive measures of negative comments on her performance immediately following her return from medical leave constituted disparate and discriminatory treatment.

d.      ECU's retaliatory and wrongful discharge on the basis of Ms. Boykin's disability constituted disparate and discriminatory treatment.

69.     Even if Defendant did not have the specific discriminatory animus to discriminate against Ms. Boykin, which is denied, Defendant's adverse actions (and omissions) were caused or influenced by certain managers, directors, or officers of Defendant who were personally motivated by a discriminatory animus that was intended to cause, and in fact did cause, Defendant's adverse employment actions and omissions against Ms. Boykin.

70.     As a direct and proximate result of ECU's discriminatory actions, Ms. Boykin has incurred damages and is entitled to compensatory damages, front pay, and other forms of relief.

71. Plaintiff prays Defendant be required to provide all appropriate remedies under the ADA.

### COUNT II:  ADA – FAILURE TO MAKE REASONABLE ACCOMMODATIONS

72. Paragraphs 1 through 71 are incorporated herein by reference as though set forth in full.

73. Ms. Boykin disclosed her disability before the date on which ECU first alleged problems with her performance, and the physical manifestations of her disabling condition were readily apparent before ECU alleged any job deficiencies.

74. Ms. Boykin requested reasonable accommodations in the form of additional guidance regarding alleged performance issues and time to address them, additional staffing during a time of understaffing, and short periods of medical leave from her position.

    a. When Ms. Boykin requested additional instructions and guidance to address alleged performance issues, ECU managers failed to engage with her, e.g., regarding her request for staffing support or additional time to complete performance objectives, ECU treated Ms. Boykin differently than employees without disabilities who, on information and belief, could perform their essential duties without additional support.

    b. The lack of clear communication coming from Ms. Boykin's supervisor and ECU management caused her distress and necessitated her continual unrequited searching for further instructions and clarity about alleged performance issues.

    c. ECU's denial of reasonable accommodations denied Ms. Boykin equal opportunities in the workplace vis-à-vis her co-workers without disabilities.

75. ECU failed to provide Ms. Boykin with additional information about alleged job

deficiencies or to conduct a staff survey, failed even to consider providing additional staffing or administrative support during a stressful time during which both clinics were admittedly understaffed, and failed to engage with her at all in an interactive dialogue about possible reasonable accommodations.

76.     If ECU had provided Ms. Boykin with some or all of the reasonable accommodations, as set forth above, then Ms. Boykin would have met or exceeded all of Defendant's reasonable expectations for her position.

77.     The actions of ECU, through its agents, servants, and employees, in subjecting Ms. Boykin to discrimination based on her disability, ultimately resulting in termination of Ms. Boykin's employment, constituted a violation of the ADA.

78.     As a direct and proximate result of ECU's refusal or failure to provide reasonable accommodation(s) as set forth above, Ms. Boykin has suffered damages in an amount to be proved at trial, but in excess of $25,000.00 for back pay with interest thereon, emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life.

## COUNT III: ADA—RETALIATION AND TERMINATION

79.     Paragraphs 1 through 78 are incorporated herein by reference as though set forth in full.

80.     Ms. Boykin complained on separate occasions about ECU's discriminatory treatment, its refusal or failure to provide reasonable accommodations, its refusal and failure to engage in the interactive process with Ms. Boykin, and other adverse actions taken against her.

81.     These adverse actions followed Ms. Boykin's reiteration of her request for reasonable accommodations for her disability, and ECU further retaliated by terminating her.

82.     ECU's actions are retaliatory because less than one week after Ms. Boykin's return

from medical leave for her disability, on or about November 12, 2018, ECU took adverse action against her in the form of vague and negative performance feedback.

83.     ECU's actions are retaliatory because after Ms. Boykin complained about disparate treatment based on her disability, engaged in further protected activity, and continually requested reasonable accommodations, which ECU denied and ignored, on June 28, 2019, Ms. Boykin's supervisor discharged her.

84.     Ms. Boykin performed her job duties in a satisfactory manner at all relevant times.

85.     Ms. Boykin's disability was a determinative factor in ECU's decision to take such adverse employment actions against her in violation of the ADA.

86.     Even if ECU did not have the specific discriminatory animus to discriminate against Ms. Boykin, which is denied, ECU's adverse actions (and omissions) were caused or influenced by certain managers, directors, or officers of ECU who were personally motivated by a discriminatory animus that was intended to cause, and in fact did cause, ECU's adverse employment actions and omissions against Ms. Boykin.

87.     As a direct and proximate result of ECU's unlawful employment actions, Ms. Boykin incurred damages and is entitled to compensatory damages, front pay, back pay with interest thereon, emotional pain, suffering, mental anguish, loss of enjoyment of life, and other forms of relief under the ADA.

**COUNT IV – Rehabilitation Act**

88.     Paragraphs 1 through 68 are incorporated by reference as though set forth in full.

89.     Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, provides that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity

receiving Federal financial assistance….

90.     Section 504, 29 U.S.C. §§ 794 and 794a, prohibits discrimination against disabled individuals by recipients of federal funds and federal contractors.

91.     On information and belief, ECU receives funding from a variety of Federal agencies, including inter alia, the U.S. Department of Health and Human Services and the U.S. Department of Education.

92.     Employers covered by Section 504 may not discriminate against qualified individuals with disabilities in any of their employment and personnel practices and must provide reasonable accommodations that enable qualified employees with disabilities to perform essential job functions and receive benefits and privileges equal to those of employees without disabilities. 29 C.F.R. § 32.13.

93.     Because Plaintiff's disabilities substantially limit at least one of Plaintiff's major life activities Plaintiff is an individual with a disability under the Rehabilitation Act.

94.     Plaintiff was fully qualified to be a Nurse Administrator of Clinical Operations and was able to perform all the essential functions of the position.

95.     ECU subjected Ms. Boykin to discriminatory treatment based on her disability, denied her reasonable accommodations, and terminated her because of her disability, the record of her disability, or because they regarded her as having a disability.

96.     As a direct and proximate result of ECU's unlawful employment actions, Ms. Boykin incurred damages and is entitled to compensatory damages, front pay and other forms of relief and all appropriate remedies under the Rehab Act.

**COUNT V - Wrongful Discharge in Violation Of North Carolina Public Policy**

97.     Paragraphs 1 through 98 are incorporated herein by reference as though set forth

in full.

98.     ECU continuously employed Ms. Boykin from her hiring in November of 1997, through several promotions, including to Nurse Administrator in 2008 until her termination on June 28, 2019.

99.     At all relevant times, Ms. Boykin was a person with a disability who was otherwise within the class of persons protected by N.C. Gen. Stat. § 143-422.2.

100.     At all relevant times, Defendants have regularly employed fifteen (15) or more employees.

101.     Per N.C. Gen. Stat. §§ 143-422.2, *et seq*., the North Carolina General Assembly has declared it to be the public policy of North Carolina to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on the account of handicap by employers which regularly employ fifteen (15) or more employees.  N.C. Gen. Stat. §§ 143-422.2.

102.     At all times relevant herein, the public policy of North Carolina is as follows:

a.     That discrimination based upon a disabling condition or handicap is contrary to the public interest and to the principles of freedom and equality of opportunity and that the rights of such persons should be protected N.C. Gen. Stat. § 168A-2; N.C. Gen. Stat. §§ 143-422.2 *et seq*.;

b.     That the practice of discrimination on the basis of a disabling condition threatens the rights and proper privileges of the inhabitants of this State; and that such discrimination results in a failure to realize the productive capacity of individuals to their fullest extent.  N.C. Gen. Stat. § 168A-2; and

c.      That discriminating on the basis of a disabling condition or handicap foments domestic strife, unrest, and deprives the State of the fullest utilization of its capacities for advancement and development, and substantially and adversely affects the interests of employees, employers, and the public in general.  N.C. Gen. Stat. §§ 143-422.2.

103.    At all times relevant herein, Ms. Boykin was subjected to, and a beneficiary of, the privileges and protections of the above-referenced public policy of North Carolina.

104.    On information and belief and at all times relevant herein, Defendant's motivation for terminating Ms. Boykin's employment was:

a.      Because of Ms. Boykin's physical/mental impairments of essential tremors, high blood pressure, anxiety and depression, which substantially limited one or more of Ms. Boykin's major life activities during the period of her employment;

b.      Alternatively, because Ms. Boykin, at all relevant times, had a record of an impairment; or

c.      Alternatively, because Ms. Boykin, at all relevant times, was regarded as having an impairment.

105.    Defendant's actions in discouraging Ms. Boykin from taking medical leave, failing to engage in an interactive dialogue regarding possible reasonable accommodations, and terminating Ms. Boykin's employment for the reasons asserted violated the public policy of North Carolina in that the same were injurious to the public or against the public good.

106.    As a direct and proximate result of Defendant's wrongful acts, as alleged herein, Ms. Boykin incurred damages in an amount to be determined at trial, but in excess of $25,000.00.

107.    On information and belief, all wrongful acts of Defendant, as alleged herein, were committed against Ms. Boykin with malice and/or with a conscious and intentional disregard of, and indifference to, Ms. Boykin's rights, which Defendant knew, or should have known, were reasonably likely to result in damage or other harm to Ms. Boykin.

108.    It is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons who hold employment without discrimination based on disability, as manifested in N.C. Gen. Stat. § 143-422.2.

109.    ECU's adverse employment actions against Ms. Boykin because of her disability is a violation of the public policy of the State of North Carolina, and Ms. Boykin has suffered substantial damages as a result.

110.    It is the public policy of the State of North Carolina to protect and safeguard the right and opportunity of all persons who hold employment without discrimination based on disability and/or protected conduct, as manifested in N.C. Gen. Stat. § 143-422.2.

111.    The conduct, acts and omissions of ECU constitute malicious, willful and wanton.

**WHEREFORE**, Ms. Boykin respectfully requests the following relief:

1.    Judgment against Defendant for compensatory damages plus interest as allowed by law and to be more particularly determined at trial;

2.    That he be permitted to recover the reasonable costs of attorneys' fees incurred in the prosecution of this action, plus interest as allowed by law;

18

3.      That all costs of this action be taxed against Defendant;

4.      That all issues in this case be tried by a jury; and

5.      For such other and further relief that the Court deems appropriate.


Respectfully submitted this 15th day of January, 2021.

*/s/ Jennifer L. Bills*
Jennifer L. Bills (N.C. Bar No. 37467)
The Noble Law Firm, PLLC
141 Providence Road, Suite 210
Chapel Hill, NC 27514
Telephone: (919) 251-6008
Facsimile: (919) 869-2079
jbills@thenoblelaw.com
*Attorney for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NORTH CAROLINA
CIVIL ACTION NO.: 4:21-cv-0008

| | |
|---|---|
| **DONNA BOYKIN,** | |
| **Plaintiff,** | **CERTIFICATE OF SERVICE** |
| **vs.** | |
| **ECU** | |
| **Defendant.** | |

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, the foregoing Complaint and Demand for Jury Trial was electronically filed with the Clerk of the Court by using the CM/ECF filing system which will send notice to Counsel for the Defendant:

Zach Padget, Esq.
N.C. Department of Justice - Education
114 W. Edenton Street
Raleigh, NC 27603
zpadget@ncdoj.gov

*/s/ Jennifer L. Bills*
Jennifer L. Bills (N.C. Bar No. 37467)
The Noble Law Firm, PLLC
141 Providence Road, Suite 210
Chapel Hill, NC 27514
Telephone: (919) 251-6008
Facsimile: (919) 869-2079
jbills@thenoblelaw.com
*Attorney for Plaintiff*